United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Ashley Parkey, individually, and, together with Nathan Tierney, as parents and natural guardians of their minor children, C.J.T., R.T., and W.T., Plaintiffs,<br><br>v.<br><br>Ryan S. Carter, an individual, and Live Action Sportfishing LLC, Defendants. | Civil Action No. 23-22192-Civ-Scola<br>**In Admiralty** |

### Order Granting in Part and Denying in Part Motion to Dismiss

This matter is before the Court on the Defendants Ryan S. Carter ("Carter") and Live Action Sportfishing LLC's ("Live Action") (collectively, the "Defendants") motion to dismiss the Plaintiffs Ashley Parkey ("Parkey") and Nathan Tierney's ("Tierney") (collectively, the "Plaintiffs") amended complaint. (Mot., ECF No. 11.) The Plaintiffs have responded opposing the Defendants' motion (ECF No. 13), and the Defendants have replied (ECF No. 16). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants in part and denies in part** the Defendants' motion to dismiss. (**Mot., ECF No. 11**.)[1]

### 1. Background[2]

This maritime negligence matter arises from an incident that took place while onboard the Defendants' fishing vessel. Parkey and Tierney are the parents of CJ.T., R.T., and W.T., who are twelve (12), ten (10) and eight (8), respectively. (Am. Compl. ¶¶ 1–2, 18, ECF No. 10.) Carter is a professional

---

[1] The Court notes that the Plaintiffs unsuccessfully attempt to proceed under the Court's diversity jurisdiction. The Plaintiffs fail to allege the citizenship of all the LLC Defendants' members. *See Rolling Greens MHP v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1021–22 (11th Cir. 2004). Because the Plaintiffs' allegations leave the Court unable to determine whether it has diversity jurisdiction over this case, the Court proceeds under its admiralty jurisdiction. *See* Fed. R. Civ. P. 9(h)(1).

[2] This background is based on the allegations in the amended complaint. For the purposes of evaluating the Defendants' motion, the Court accepts the Plaintiffs' factual allegations as true and construes the allegations in the light most favorable to them per Federal Rule of Civil Procedure 12(b)(6).

sports fisherman who operates as the managing member of Live Action, a sports fishing charter company located in Key West, Florida. (*Id.* ¶¶ 3–4, 9.)

In June 2020, Parkey purchased a half-day fishing trip with the Defendants for herself and her three minor children on the Defendants' fishing vessel, a 2013 24' Pathfinder ("Pathfinder"). (*Id.* ¶¶ 7, 15.) On June 18, 2020, at approximately 5:00 p.m., Parkey and the children joined Carter and proceeded on the fishing trip as the only passengers on the Pathfinder. (*Id.* ¶¶ 16, 18.) The fishing activities took place within three miles from shore, in the fishing flats near Key West, Florida. (*Id.* ¶ 16.)

Although Parkey had been under the impression that they would only be fishing for tarpon, at some point during the trip Carter started fishing for sharks. (*Id.* ¶¶ 19–20.) Carter baited the sharks by dropping dead fish, like tarpon and barracuda, on a line over the side of the Pathfinder, immediately attracting numerous sharks which, in a frenzy, were aggressively feeding on the chum. (*Id.* ¶ 20.) With Carter's assistance, Parkey's son, C.J.T., hooked a lemon shark. (*Id.* ¶ 21.) Parkey describes the hooked lemon shark as "aggressive" and notes that it was "thrashing about." (*Id.*) In addition, Parkey recalls Carter commenting that "the shark [wa]s freaking out." (*Id.*) Notwithstanding this, once the shark had been pulled close to the Pathfinder, Carter instructed C.J.T. to reach down and grab the shark's fin for Parkey to take a photo, all the while informing and assuring C.J.T. and PARKEY that the shark would not rise out of the water. (*Id.* ¶¶ 22–23.)

Trusting Carter's assurances, C.J.T. reached down and grabbed the shark's fin. (*Id.* ¶ 24.) But the shark suddenly flipped over, rose out of the water, and grabbed C.J.T.'s left hand with its teeth. (*Id.* ¶ 25.) The shark bit C.J.T.'s hand severely, to the point where his left middle finger seems to have been partly or completely amputated. (*Id.*) Parkey, R.T., and W.T. were within a few feet of C.J.T. when his hand was in the shark's mouth. (*Id.* ¶ 27.) At that moment, Carter began punching the shark with his fist, causing it to eventually release its grip on C.J.T. (*Id.* ¶ 29.) Immediately following the attack, Carter did not give C.J.T. any medical aid or treatment or point Parkey to anywhere on the vessel where she might access a first aid kit. (*Id.* ¶¶ 31–33.) Carter drove the Pathfinder back to shore, where C.J.T. was transported via EMS and then helicopter to Nicklaus Children's Hospital. (*Id.* ¶¶ 34–38.)

Based on the foregoing events, the Plaintiffs bring eight causes of action against the Defendants: intentional infliction of emotional distress against Carter (Count One); vicarious liability for intentional infliction of emotional distress against Live Action (Count Two); negligence against Carter (Count Three); vicarious liability for negligence against Live Action (Count Four); negligent training and negligent supervision against Live Action (Counts Five

and Six); negligent infliction of emotional distress against Carter (Count Seven); and vicarious liability for negligent infliction of emotional distress against Live Action (Count Eight). (*See generally id.*) The Defendants have moved to dismiss all the Plaintiffs' claims, in addition to their request for punitive damages. (Mot., ECF No. 11.) In their response, the Plaintiffs oppose the Defendants' motion as to all but Counts Five and Six, conceding that these two counts should be dismissed. (*See* Resp. 9, ECF No. 13.) For the reasons stated below, the Court also **grants** the Defendants' motion as to Counts One, Two, Seven, Eight, and the Plaintiffs' request for punitive damages, and **grants in part and denies in part** the motion as to Counts Three and Four. (**Mot., ECF No. 11**.)

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis[3]

#### A. Intentional Infliction of Emotional Distress (Count One) and Vicarious Liability for Intentional Infliction of Emotional Distress (Count Two)

Courts sitting in admiralty typically look to the standards set out in the Restatement (Second) of Torts § 46 (1965) as well as state law to evaluate claims for intentional infliction of emotional distress ("IIED"). *See, e.g., Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002) (citations omitted) (noting that since there is no maritime law concerning IIED claims, courts regularly employ the Restatement (Second) of Torts to evaluate IIED claims in

---

[3] The parties agree that the Plaintiffs' claims are governed by general maritime law. (*See* Am. Compl. ¶ 17, ECF No. 10; Mot. 3, ECF No. 11.)

federal maritime cases); *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1319 (M.D. Fla. 2002) (citing to both the Restatement (Second) of Torts and Florida state law in case asserting claim for IIED for tort that occurred on a cruise ship).

Section 46 of the Restatement (Second) of Torts states, in relevant part, that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." To state a claim for IIED under Florida law, a plaintiff must show: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) that the conduct caused emotional distress; and (4) that the distress was severe. *Nettles v. City of Leesburg Police Dep't*, 415 F. App'x. 116 (11th Cir. 2010) (quoting *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990)). Here, the Defendants argue that the Plaintiffs' allegations fail to rise to the level of outrageous conduct necessary to state a claim for IIED. (Mot. 4–6, ECF No. 11.)

The amended complaint alleges that the Defendant Carter started fishing for sharks without Parkey's prior knowledge and baited the sharks by chumming the water near the Pathfinder. (Am. Compl. ¶¶ 19–20, ECF No. 10.) Attracted by the dead fish, numerous sharks came near the vessel, and frenziedly started attacking the bait. (*Id.* ¶ 20.) Carter helped C.J.T. hook a lemon shark among the group and instructed C.J.T. to reach down and grab the lemon shark's fin to pose for a picture. (*Id.* ¶¶ 21–22.) Carter reassured C.J.T. that it was okay to grab the shark's fin despite knowing that the shark was behaving aggressively and that its feeding had just been interrupted. (*Id.* ¶¶ 23–24.) Indeed, Carter even commented that the lemon shark was "freaking out." (*Id.* ¶ 21.) When the shark jumped out of the water and bit C.J.T's hand, Carter started punching the shark to get it to release C.J.T. (*Id.* ¶¶ 29–30.) After C.J.T. was free of the shark, Carter did not give him any medical aid or treatment, but drove the Pathfinder back to shore, where someone call 911. (*Id.* ¶¶ 31–35.)

Carter's alleged conduct fails to rise to the level of outrageousness required by the Restatement (Second) of Torts and Florida state law. "Outrageous" conduct is that which "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011). The Restatement and Florida courts have stated that:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized

>by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Restatement (Second) of Torts, § 46, cmt. d; *see also Brown v. Zaveri*, 164 F. Supp. 2d 1354, 1362 (S.D. Fla. 2001) (Lenard, J.) (explaining that "outrageousness refers to the attitude of society toward what is done" (cleaned up)).

Notably, the cause of action for IIED is "sparingly recognized by the Florida courts." *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998) (King, J.). A plaintiff alleging IIED faces an extremely high burden, as Florida courts have repeatedly found a wide spectrum of behavior insufficiently "outrageous." A brief survey of Florida and maritime cases addressing claims of IIED underscores this point. *See, e.g., Rubio*, 445 F. App'x at 175 (finding failure to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); *Wallis*, 306 F.3d at 842 (finding no outrageous conduct where crew member on cruise ship remarked in the plaintiff's hearing after her husband fell overboard that her husband was probably dead and that his body would be sucked under the ship, chopped up by the propellers, and would probably not be recovered); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (Moore, J.) (finding no outrageous conduct where crew members assaulted cruise passenger and prevented her from leaving her room for a period of time); *Vamper*, 14 F. Supp. 2d at 1306–07 (finding no outrageous conduct where defendants fabricated reckless driving charge against plaintiff, called him the "n" word, threatened him with termination, and physically struck him on ankle); *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, (S.D. Fla. 2016) (Seitz, J.) (finding failure to allege sufficiently outrageous conduct where plaintiff's child drowned in a pool advertised as "kid friendly," though lacking life guards, lifesaving equipment, and personnel prepared to respond to a drowning event).

Even construing the facts in the light most favorable to the Plaintiffs, Carter's alleged conduct is not such that it "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *See Rubio*, 445 F. App'x at 175. While the Plaintiffs' allegations describe distressing events, the allegations simply do not rise to the level of outrageousness required by the applicable case law.

Finally, because the Plaintiffs' claim for intentional infliction of emotional distress against Carter fails, their claim for vicarious liability for the same conduct against Live Action necessarily fails as well. *See, e.g., Dillard v. Patriot Grp. Int'l*, No. 6:12-cv-178-Orl-18KRS, 2012 U.S. Dist. LEXIS 205790, at *8-9 (M.D. Fla. May 18, 2012) ("Because Count VI alleges vicarious liability for

intentional infliction of emotional distress, Count VI fails with the underlying claim and is dismissed as well.").

### B. Negligence (Count Three) and Vicarious Liability for Negligence (Count Four)

"To plead negligence in a maritime case, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Carribean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014). "Under maritime law, the owner of a ship in navigable waters owes passengers a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959)). "Breach of duty" is an "issue[] of fact normally within the province of the jury." *Franks v. Bolden*, 774 F.2d 1552, 1556 (11th Cir. 1985).

The Defendants argue that Counts Three and Four of the amended complaint should be dismissed because they improperly seek to impose a heightened duty of care on them. (Mot. 7–8, ECF No. 11.) The Defendants are correct in pointing out that the Plaintiffs' negligence claims are not wholly clear as to the standard of care they seek to impose on the Defendants. The Plaintiffs cite the correct standard of care in alleging that the Defendants "owed a duty to the Plaintiffs to exercise reasonable care for the safety of their invitees and passengers under the circumstances." (*See* Am. Compl. ¶¶ 60, 66, ECF No. 10.) However, in later expanding on what that duty was, the Plaintiffs seem to want to impose a heightened duty on the Defendants, such as by alleging that the Defendants owed a duty to "exercise reasonable care in supervising passengers with *all safety care matters* while aboard the subject vessel" and to "*ensure* the safety of the Plaintiffs." (*Id.* ¶¶ 61(c), 61(g), 68(c), 68(g) (emphases added).) The Plaintiffs' response in opposition to the motion to dismiss only serves to confuse matters, by arguing that the Defendants indeed owed a heightened duty of care, but also that they owed a duty to exercise reasonable care in providing medical care to C.J.T. following the subject incident. (*See generally* Resp. 6–9, ECF No. 13.)

The Plaintiffs are incorrect that the Defendants owed them a heightened duty of care. As noted, Eleventh Circuit precedent "is clear that the owner of a vessel in navigable waters owes passengers a duty of reasonable care under the circumstances." *Kressly v. Oceania Cruises, Inc.*, 718 F. App'x 870, 872 (11th Cir. 2017); *see also Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 n.4 (11th Cir. 2020) (same). Indeed, in *Kressly*, the Eleventh Circuit rejected the appellant's

argument that the court should "adopt a heightened standard of care for vessels when they transport passengers during tumultuous weather," explaining that the appellant "d[id] not provide any circuit precedent to support her contention that, under the specific circumstances of th[e] case, [the appellee] owed her a heightened standard of care." 718 F. App'x at 872. Like the appellant in *Kressly*, the Plaintiffs here do not provide any authority that supports the imposition of a heightened standard of care on the Defendants under the circumstances of this case. The authority that the Plaintiffs do cite is either misquoted or distinguishable.

The Defendants do not argue, however, that the Plaintiffs' negligence claims should be dismissed to the extent that they only seek to hold the Defendants to a duty of reasonable care. Here, the key question is whether Carted failed to exercise reasonable care in not taking adequate precautions to prevent the occurrence, and extent, of C.J.T's injuries while a passenger on the Pathfinder. Thus, because Counts Three and Four may fairly be read to impose the correct standard of care, the Court will not dismiss them completely. *See, e.g.*, *Jackson-Davis v. Carnival Corp.*, Civil Action No. 17-24089-Civ-Scola, 2018 U.S. Dist. LEXIS 48218, at *7 (S.D. Fla. Mar. 23, 2018) (Scola, J.) (explaining that "when viewed through the proper lens, [] allegations amount[ed] to violations of [the defendant's] overarching duty to exercise reasonable care under the circumstances"). Instead, the Court dismisses Counts Three and Four only to the extent they seek to impose a heightened duty on the Defendants. *See, e.g.*, *Hesterly v. Royal Caribbean Cruises*, 515 F. Supp. 2d 1278, 1288 (S.D. Fla. 2007) (Gold, J.) ("Royal Caribbean's Motion to Dismiss Count I of the Complaint is DENIED insofar as plaintiff has alleged the correct standard of care, and GRANTED only to the extent that Plaintiff has alleged a duty of 'due diligence for plaintiff's safety' and 'a duty to warn of all dangers.'"); *Holguin v. Celebrity Cruises, Inc.*, No. 10-20215-CIV, 2010 U.S. Dist. LEXIS 43638, at *2 (S.D. Fla. May 4, 2010) (Altonaga, J.) ("The Court will not strike alleged duties from the Complaints in line-item fashion. It is sufficient that Count I alleges facts supporting *a* duty of care.").

### C. Negligent Infliction of Emotional Distress (Count Seven) and Vicarious Liability for Negligent Infliction of Emotional Distress (Count Eight)

A claim for negligent infliction of emotional distress ("NIED") requires an adequately pled underlying claim of negligence. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In addition, an NIED claim "requires mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another. . . ." *Id.* at 1337-38 (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S.

532, 544, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994)). Federal maritime law utilizes the "zone of danger" test. *Id.* The zone of danger test permits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct. *Tassinari v. Key West Water Tours, L.C.*, 480 F.Supp.2d 1318, 1323 (S.D. Fla. 2007) (Moore, J.) (citing *Consol. Rail Corp.*, 512 U.S. at 547–48). In addition, the zone of danger test permits recovery for NIED if "a plaintiff is placed in immediate risk of physical harm by defendant's negligent conduct." *Chaparro*, 693 F.3d at 1337–38 (internal quotations and citations omitted). In other words, the Plaintiffs must allege more than merely being a witness to a traumatic event to sufficiently plead NIED; the plaintiff must be, at least, threatened with imminent physical impact. *Id.*

Counts Seven and Eight are brought by Parkey individually, and by Parkey and Tierney on behalf of R.T. and W.T. The Defendants argue that these counts must be dismissed because the Plaintiffs fail to sufficiently allege that Parkey, R.T., or W.T. either suffered a physical impact due to the Defendants' negligent behavior or were placed in immediate risk of physical harm as a direct result of that behavior. The Court agrees with the Defendants.

The Plaintiffs do not allege that Parkey, R.T., or W.T. sustained a physical impact as a result of Carter's conduct. In their response opposing the motion to dismiss, the Plaintiffs argue that Parkey, R.T., and W.T.'s proximity to C.J.T and to the shark supports a conclusion that they were within the zone of danger created by Carter's negligent conduct. The Plaintiffs highlight the small size of the Pathfinder and the fact that "[w]hen the shark flipped over, it aggressively rose out of the water[.]" (*See* Am. Compl. ¶ 25, ECF No. 10.) However, this ignores the critical fact that the shark was only able to bite C.J.T. because he "reached down to grab [its] fin." (*Id.* ¶ 24.) While Parkey, R.T., and W.T. would necessarily have been near C.J.T. and the shark when this occurred, there are no allegations in the complaint that would support a conclusion that they were at immediate risk of physical harm from the shark, which always remained in the water and outside the Pathfinder.

Accordingly, the Plaintiffs cannot assert a claim for NIED on behalf of Parkey, R.T., or W.T. and Counts Seven and Eight must be dismissed.

### D. Punitive Damages

Under binding Eleventh Circuit precedent, punitive damages are available in maritime cases only "upon a showing of intentional or wanton and reckless conduct on the part of defendants amounting to a conscious disregard of the rights of others." *In re AMTRACK "SUNSET Ltd." TRAIN CRASH IN BAYOU CANOT v. WARRIOR & GULF NAVIGATION Co.*, 121 F.3d 1421, 1428 (11th Cir.

1997) (cleaned up); *see also Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1325 (S.D. Fla. 2020) (Ungaro, J.) ("[P]unitive damages may still be available, but only upon a showing of the defendant's intentional misconduct."); *Incardone v. Royal Caribbean Cruises*, No. 16-20924-CIV-MARTINEZ-GOODMAN, 2020 U.S. Dist. LEXIS 10000, at *16 (S.D. Fla. Jan. 18, 2020) (Martinez, J.) ("The Eleventh Circuit has made clear that punitive damages are precluded in maritime personal injury claims except in exceptional circumstances and upon a showing of intentional misconduct."). "To demonstrate intentional misconduct for the purposes of recovering punitive damages, plaintiffs must show that 'the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.'" *Roberts v. Carnival Corp.*, No. 1:19-cv-25281-KMM, 2020 U.S. Dist. LEXIS 194403, at *11 (S.D. Fla. Oct. 19, 2020) (Moore, J.) (quoting *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010)). A request for punitive damages must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery of punitive damages, in other words, factual allegations showing intentional misconduct. *See, e.g., Estate of Pankey v. Carnival Corp.*, No. 22-cv-24004, 2023 U.S. Dist. LEXIS 141125, at *8-9 (S.D. Fla. Aug. 11, 2023) (Bloom, J.).

In their response opposing dismissal, the Plaintiffs do not even argue that the Defendants' conduct amounted to anything like a conscious disregard of the rights of others. Rather, they cite varying standards, ultimately contending that the conduct at issue was, indeed, "outrageous." (*See* Resp. 10–11, ECF No. 13.) However, even if the Court were to apply the apparently more flexible standards cited by the Plaintiffs, the outcome would be the same. In short, as discussed in detail with respect to the Plaintiffs' claims for intentional infliction of emotional distress, while the Plaintiffs' allegations describe distressing events, they simply do not demonstrate conduct rising to the requisite level of outrageousness.

### 4. Conclusion

Accordingly, for the reasons stated above, the Court **grants in part and denies in part** the Defendants' motion to dismiss. (**Mot., ECF No. 11**.) Counts One, Two, Five, Six, Seven, and Eight of the Plaintiffs' amended complaint are **dismissed with prejudice**. Counts Three and Four are **dismissed with prejudice** only to the extent they seek to hold the Defendants to a heightened duty of care. In addition, the Court **strikes** all claims within the amended complaint for punitive damages. The Defendants shall file an answer to the amended complaint no later than November 28, 2023.

**Done and ordered** at Miami, Florida on November 14, 2023.

_____
Robert N. Scola, Jr.
United States District Judge